UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DOUGLAS M. BOYLE and<br>ANTHONY J. GOUVEIA | : | |
| | : | |
| Plaintiffs, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| vs. | : | **OPINION** |
| | : | |
| QUEST DIAGNOSTICS,<br>INCORPORATED, | : | Civil Action No.: 05-CV-4463 (DMC) |
| | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon motion by Defendant Quest Diagnostics, Inc. ("Quest") to dismiss Plaintiffs' Douglas Boyle's ("Mr. Boyle") and Anthony Gouveia's ("Mr. Gouveia") claims for breach of contract and breach of the implied covenant of good faith and fair dealing. No oral argument was held pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Quest's motion is **granted** in part and **denied** in part.

I. Background

A. Procedural History

Plaintiffs Douglas Boyle ("Mr. Boyle") and Anthony Gouveia ("Mr. Gouveia") brought this action against Defendant Quest Diagnostics, Inc. ("Quest") by filing a two-count complaint on March 18, 2005 in the Superior Court of California. (Defendant's Brief ("Def. Br.") at 2). Plaintiffs alleged that Quest breached their employment contracts and retaliated against them in violation of California public policy after they had expressed concerns regarding due diligence errors in Quest's financial projections. (Id.)

Quest removed the action to the United States District Court for the Central District of California on April 25, 2005 pursuant to 28 U.S.C. § 1332. (Id.) Following Quest's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the Central District of California transferred the action to the United States District Court for the District of New Jersey. (Id.) After the District of New Jersey granted Plaintiffs' motion for leave to amend their complaint, Plaintiffs filed their First Amended Complaint on March 9, 2006. (Id.) The First Amended Complaint asserts two causes of action: 1) Breach of Contract-Equitable Estoppel-Detrimental Reliance; and 2) Violation of the Conscientious Employee Protection Act. (Id.) Quest now moves to dismiss only Plaintiffs' common law breach of contract claim (and the breach of the implied covenant of good faith and fair dealing claim included within the breach of contract claim) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Id.)

### B. Factual History

The Court accepts the following factual allegations to be true for purposes of this motion to dismiss only. Mr. Boyle joined Quest in 1995. (First Amended Complaint ("Complaint") at ¶ 6). His first job title was Corporate Revenue Controller. (Id.) Mr. Gouveia joined Unilab Corporation ("Unilab") in 2000. (Complaint at ¶ 7). His first job title at Unilab was Vice President of Finance and Corporate Controller. (Id.) Mr. Gouveia became a Quest employee when Quest acquired Unilab on February 28, 2003. (Id.) Quest is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey. (Complaint at ¶ 3).

During the fourth quarter of 2002, Mr. Boyle was asked by David Zewe ("Zewe"), Quest's Senior Vice President for Operations, to relocate to California and oversee the integration of Unilab into Quest. (Complaint at ¶ 8). Zewe told Mr. Boyle that if he relocated to

California, he could expect to become Regional Vice President for the California area within one to two years. (Complaint at ¶ 9). Mr. Boyle accepted the relocation and was given a letter, dated January 23, 2003, which set forth the terms of his relocation and new assignment as Vice President of Finance and Administration. (Complaint at ¶¶ 11-12, see also Exhibit 1 attached to Complaint).

Mr. Boyle's first task upon relocating to California was to review the financial projections prepared by Quest's Corporate Finance Team as part of its due diligence of the Unilab acquisition. (Complaint at ¶ 12). Quest's Corporate Finance Team was under the direction of Robert Hagemann ("Hagemann"), Quest's Senior Vice President and Chief Financial Officer. (Complaint at ¶¶ 11, 12). Mr. Boyle discovered several material errors and omissions in Quest's due diligence work. (Id.) After discovering the errors, Mr. Boyle traveled to Quest's corporate headquarters in New Jersey in May 2003 to discuss his findings with Zewe, Hagemann, and Ken Freeman, Quest's CEO at the time. (Complaint at ¶¶ 10, 13).

A few months after Quest acquired Unilab, Mr. Gouveia was named Quest's Regional Controller for the California area, on June 23, 2003. (Complaint at ¶ 15). Mr. Gouveia had several reservations about accepting this position, including his concerns that he did not have adequate staffing to perform all of his tasks and that he would eventually become a scapegoat for the aforementioned due diligence errors. (Id.)

Following the discovery and subsequent reporting of the due diligence errors, Quest's upper management began to retaliate against Mr. Boyle and Mr. Gouveia. (Complaint at ¶ 16). Some of these retaliatory acts include Hagemann's decision to exclude Mr. Boyle from staff meetings, Zewe's refusal to disclose to Mr. Boyle the terms of his integration incentive bonus plan despite Zewe's assurances that the terms would be disclosed, upper management's decision

to diminish Mr. Boyle's role, and upper management's refusal to provide adequate staffing to the California area despite requests for additional staffing by Mr. Boyle and Mr. Gouveia. (Complaint at ¶¶ 16a, 16b, 16c, 16e). On June 10, 2004, Mr. Boyle wrote a letter to Zewe complaining about the retaliatory acts. (Complaint at ¶ 16l). However, Zewe never took any action to remedy the situation. (Id.)

On July 12, 2004, Mr. Boyle was constructively terminated from Quest. (Complaint at ¶ 17). By this time, his role within the company had been effectively eliminated and he could no longer tolerate the hostile work environment. (Id.) In late 2004, Mr. Gouveia informed management that Quest was not going to meet the financial projections prepared by Quest's Corporate Finance Team. (Complaint at ¶ 19). Quest's management objected to Mr. Gouveia's assessment and attempted to coerce him to change his findings. (Id.) Quest ultimately terminated Mr. Gouveia in December 2004 (Complaint at ¶ 18).

## II. Discussion

### A. Standard of Review:  Dismissal for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the pleader may seek a dismissal of one or more claims for "failure to state a claim upon which relief may be granted." In deciding a Rule 12(b)(6) motion, "all allegations must be taken as true and viewed in the light most favorable to the plaintiff." Gomez v. Toledo, 446 U.S. 635, 636 (1980); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court must dismiss the complaint for failure to state a claim. Hechaun v. King & Spalding, 467 U.S. 69, 73 (1984); Lynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

### B. Applicable Law: Conscientious Employee Protection Act

The Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et. seq., "protects an employee from employer retaliation in cases where the employee 'blows the whistle' on illegal or unethical activity." Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541, 545 (D.N.J. 2004); See Hernandez v. Montville Twp. Bd. of Educ., 354 N.J. Super. 467, 473, 808 A.2d 128 (App. Div. 2002). In order to establish a *prima facie* case under CEPA, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law or rule or regulation promulgated pursuant to law; (2) he or she performed whistleblowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action.[1]

McCullough v. City of Atlantic City, 137 F. Supp. 2d 557, 573 (D.N.J. 2001); Hernandez, 354 N.J. Super at 473, 808 A.2d 128; Kolb v. Burns, 320 N.J. Super. 467, 476, 727 A.2d 525 (App. Div. 1999).

CEPA contains a broad waiver provision. See Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1508 (D.N.J. 1992); Flaherty v. The Enclave, 255 N.J. Super. 407, 410, 605 A.2d 301 (Law Div. 1992). The waiver provision, N.J.S.A. 34:19-8, provides:

---

[1]N.J.S.A. 34:19-3c provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law...; or
> (2) is fraudulent or criminal.

Hernandez, 354 N.J. Super. at 473, n. 3, 808 A.2d 128.

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

Casper, 787 F. Supp. at 1508. The waiver provision only applies to claims "that require a finding of retaliatory conduct that is actionable under CEPA." Young v. Schering Corp., 141 N.J. 16, 29, 660 A.2d 1153 (1995); See Casper, 787 F. Supp. at 1509. Finally, the waiver provision should not operate to bar claims that are "substantially independent" of the CEPA claim. Young, 141 N.J. 16, 29, 660 A.2d 1153; See Kadetsky v. Egg Harbor Twp. Bd. of Educ., 82 F. Supp. 2d 327, 342 (D.N.J. 2000) (stating that claims that require different proofs than a CEPA claim are not barred by the waiver provision).

### C. Rules of Statutory Interpretation: Interpreting CEPA's Waiver Provision

Courts should read statutes "sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959). Where a statute is clear and unambiguous, a court should give the statute its plain meaning. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987); Renz v. Penn Cent. Corp., 87 N.J. 437, 440, 435 A.2d 540 (1981). But, if a statute's plain language is far from clear, a court must rely on "other rules of statutory interpretation." Young, 141 N.J. at 25, 660 A.2d 1153. Some other rules of statutory interpretation include: (1) construing statutes with remedial purposes liberally, Brookins v. Murray, 131 N.J. 141, 149, 619 A.2d 583 (1993); (2) construing statutes contrary to the common law narrowly, Oswin v. Shaw, 129 N.J. 290, 310, 609 A.2d 415 (1992); and (3) construing

exceptions to statutes narrowly, Service Armament Co. v. Hyland, 70 N.J. 550, 558-559, 362 A.2d 13 (1976).

CEPA "should be construed liberally to effectuate its important social goal." Hernandez, 354 N.J. Super. at 473, 808 A.2d 128; See Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 418, 650 A.2d 958 (1994). The New Jersey Supreme Court determined that CEPA's waiver provision was ambiguous and stated a literal reading of the waiver would "penalize former employees by forcing them to choose between a CEPA claim and other legitimate claims that are substantially, if not totally, independent of the retaliatory discharge claim." Young, 141 N.J. 16, 25, 660 A.2d 1153; See State v. Haliski, 140 N.J. 1, 16, 656 A.2d 1246 (1995). Therefore, the CEPA waiver provision does not operate to bar all claims that relate to "rights and remedies which arise out of the employment relationship between plaintiff and defendant." Flaherty, 255 N.J. Super. at 412, 605 A.2d 301.

### III. Analysis

In this action, Mr. Boyle asserts that Quest and its upper management breached his employment contract by: (1) failing to pay him all amounts due under his contract; (2) failing to promote him to Regional Vice President of the California area, or alternatively, failing to relocate him back to Quest's corporate headquarters; and (3) wrongfully constructively terminating his employment. (Complaint at ¶ 25). Mr. Gouveia asserts that Quest and its upper management breached his employment contract by: (1) failing to pay him all amounts due under his contract; and (2) wrongfully terminating his employment. (Complaint at ¶ 26). Furthermore, Mr. Boyle and Mr. Gouveia contend that Quest and its upper management breached the implied covenant of good faith and fair dealing by unfairly preventing them from obtaining the benefits

of their employment contracts and terminating them for expressing concerns regarding financial due diligence errors made by Quest's Corporate Finance Team.  (Complaint at ¶¶ 27c, 27d).

The Court finds that Plaintiffs' breach of contract claim for failure to pay all amounts due under Plaintiffs' employment contracts is not waived because this particular claim does not require proof of retaliatory discharge.  "It would be illogical to assume that the [New Jersey] legislature intended [Plaintiffs] to waive [their] right [to] compensation independent of proving a cause of action under CEPA."  Flaherty, 255 N.J. Super. at 413, 605 A.2d 301.  To the extent Plaintiffs seek any unpaid  pre-termination compensation, Quest's motion to dismiss Plaintiffs' breach of contract claim for failure to pay Plaintiffs all amounts due under their employment contracts is denied.

Also, Plaintiff Boyle's breach of contract claim (premised on the doctrine of equitable estoppel) for failure to promote Mr. Boyle to Regional Vice President of the California area is not waived.  "The doctrine of equitable estoppel arises 'where one party through its acts (1) negligently misrepresents material facts (2) knowing or having reason to know that the other party will justifiably rely upon the misrepresentation to his detriment and (3) the other party so relies.'"  Cerankowski v. CNA Ins. Co., No. 03-4333, 2004 U.S. Dist. LEXIS 13260, at *12 (E.D. Pa. Jul. 8, 2004) (quoting Williams v. Workmen's Comp. Appeals Bd., 166 Pa. Commw. 276, 646 A.2d 633 (1994)).  Because Mr. Boyle's breach of contract claim for failure to promote Mr. Boyle to Regional Vice President requires different proofs than a CEPA claim, Quest's motion to dismiss this portion of the breach of contract claim is denied.

However, Plaintiffs' claims for breach of contract for wrongful actual or constructive termination and breach of the implied covenant of good faith and fair dealing are indeed waived by the CEPA claim.  Because Plaintiffs' breach of contract claim for wrongful actual or

constructive termination is "based on the employees' disclosure of wrongdoing, it [falls] under CEPA and [is] waived." Flaherty, 255 N.J. Super. at 413, 605 A.2d 301; See Moore v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., No. 90-1182, 1990 U.S. Dist. LEXIS 9201 (D.N.J. Jul. 16, 1990) (holding that a common law claim for retaliatory discharge is waived by a CEPA claim).

Furthermore, while a claim for a breach of the implied covenant of good faith and fair dealing "may not be dependent upon facts which would constitute a violation under CEPA," the breach of the implied covenant of good faith and fair dealing claim is "substantially related" to the CEPA claim in this action. See Flaherty, 255 N.J. Super. at 413, 605 A.2d 301. Plaintiffs allege that Quest breached the implied covenant by depriving them of the benefits of their employment contracts and actually or constructively terminating them. Since evidence of retaliatory conduct on the part of Quest's upper management will necessarily be required to prove bad faith and unfair dealing in this action, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed.

## IV.  Conclusion

For the foregoing reasons, Quest's motion to dismiss is **granted** as to Plaintiffs' breach of contract claim alleging wrongful actual or constructive termination and Plaintiffs' claim alleging breach of the implied covenant of good faith and fair dealing. However, Quest's motion to dismiss is **denied** as to Plaintiffs' breach of contract claim alleging failure to pay all amounts due under the employment contracts and material misrepresentation based on Quest's failure to promote Mr. Boyle.  An appropriate Order accompanies this Opinion.

 S/   Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       August 1, 2006
Original:   Clerk's Office
cc:         All Counsel of Record
            File